UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TASHAWNA JONES,                     CIVIL NO. 17-5448 (MJD/DTS)

    Plaintiff,

v.                                            REPORT AND RECOMMENDATION

PUBLIC HOUSING AGENCY
OF THE CITY OF SAINT PAUL,

    Defendant.

---

Heather Meyers, Esq., Southern Minnesota Regional Legal Services, 55 East Fifth Street, Suite 400, St. Paul, Minnesota, 55101, for Plaintiff

Sean Dillon Whatley, Esq., Office of the St. Paul City Attorney, 400 City Hall, 15 West Kellogg Boulevard, St. Paul, Minnesota, 55102, for Defendant

---

## INTRODUCTION[1]

Plaintiff Tashawna Jones' ("Jones") Section 8 rental assistance was terminated on September 30, 2017. Jones asserts that her termination was unlawful because she was not afforded proper due process and because it violated a contract with Defendant Public Housing Agency of the City of Saint Paul ("PHA"). Jones seeks Emergency Injunctive Relief requiring PHA to reinstate her Section 8 rental assistance. For the reasons outlined below, it is recommended that Plaintiff's Motion for Emergency Injunctive Relief [Docket No. 8] be denied.

---

[1] This matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

**FINDINGS OF FACT**

PHA has provided Jones housing assistance since April 30, 2008. Def. Mem. 3, Docket No. 15. In order to continue receiving assistance, Jones annually completed an eligibility form. Compl. ¶ 29, Docket No. 1. This form compelled Jones to disclose all sources of income. *Id.* ¶ 31. In 2014, Jones began to receive intermittent child support payments but did not report them to PHA because she mistakenly believed they were being automatically reported. *Id.* ¶¶ 32-34. Jones received $2,227.92 in child support from June 2014 through January 2017. PHA Balance Ltr., Compl. Ex. 2, Docket No. 1-1. At her June 2017 recertification appointment, Jones inquired whether PHA was aware of her child support income. Compl. ¶ 34, Docket No. 1. PHA was unaware of the payments and told Jones she may be required to repay PHA, but did not mention termination from the program. *Id.*

On August 21, 2017, Jones received an envelope from PHA. *Id.* ¶ 35. The envelope contained three documents: a letter informing Jones her Section 8 assistance was terminated effective September 30, 2017 [Compl. Ex. 1, Docket No. 1-1]; a letter informing Jones she owed PHA $668 [*Id.* Ex. 2]; and a proposed Section 8 Repayment Agreement [*Id.* Ex. 3]. The termination letter notified Jones that her assistance was being revoked because she failed to report her child support income and provided Jones until August 27, 2017 to request an informal hearing to challenge her termination. *Id.* Ex. 1.

The balance due letter informed Jones she owed PHA a retroactive balance for overpaid assistance totaling $668. *Id.* Ex. 2. The letter warned Jones that, should she not pay the balance or enter in to a Repayment Agreement, her Section 8 assistance

*could* be terminated.  *Id.*  Jones signed the Section 8 Repayment Agreement, which allowed her to make monthly payments of $56 on the balance due.  *Id.* Ex. 3.  Jones mistakenly believed that if she met her repayment obligations, her Section 8 assistance would continue.  Compl. ¶¶ 45, 47, Docket No. 1.  Upon learning she was mistaken, Jones retained an attorney, who, on September 15, 2017, requested an informal hearing to challenge her termination, but PHA denied this request as untimely*.  Id.* ¶¶ 48, 52-53 and Exs. 6-9, Docket Nos. 1, 1-1.

On December 14, 2017, Jones filed this lawsuit asking the Court to order PHA to reinstate her Section 8 assistance.  Docket No. 1.  On February 6, 2018, Jones lost her job and primary source of income.  Pl. Aff. ¶¶ 2-4, Docket No. 9.  By this time Jones had been without Section 8 assistance for just over three months.  Compl. ¶ 28.  At the hearing, PHA's counsel conceded that if Jones were still on Section 8 assistance at the time she lost her job, the amount of assistance she received would have increased to account for her loss of income, though not until April, 2018.  On February 21, 2018, Jones moved for a Temporary Restraining Order ("TRO"), arguing that without Section 8 assistance she would be unable to pay future rent, leaving her and her three children homeless.  Pl. Mem. 2-3, Docket No. 10.

## CONCLUSIONS OF LAW

**I.  Standard of Review[2]**

In determining whether to grant a preliminary injunction, courts consider the following factors: "(1) the threat of irreparable harm to the movant; (2) the state of the

---

[2]  Both parties' filings discussed whether Jones' request for reinstatement of benefits should be viewed as prohibitory or mandatory injunctive relief, a distinction that originates in the Second Circuit case law but has never been explicitly adopted in the Eighth Circuit.  Thus, we do not consider it here.

3

balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability the movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). In essence, the Court must determine "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* No one *Dataphase* factor is dispositive, and the court "must balance all factors to determine whether the injunction should issue." *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006). However, "[s]uccess on the merits has been referred to as the most important of the four factors." *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). Granting emergency injunctive relief is "an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Id.* at 705.

## II.     Applying The *Dataphase* Factors

### A.     Irreparable Harm

To establish irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir.1996) (per curiam) (citations omitted). Jones argues she will suffer irreparable harm if the injunction is not granted because she and her children may be evicted from their apartment and rendered homeless, exacerbating her mental health issues and harming her children's education. Jones Aff. ¶¶ 10-13. Homelessness is "sufficient to demonstrate irreparable harm." *Perkins v. Metro. Council, Metro HRA*, 21 F. Supp. 3d 1006, 1011 (D. Minn. 2014). Though the potential harm identified by Jones is quite serious, it is at this juncture

somewhat unclear whether that harm is certain to occur and imminent. At the hearing, Jones' attorney stated that Jones is actively seeking both substitute employment and applying for unemployment benefits, and that she is attempting to negotiate with her landlord for continued occupancy of her apartment. This is not to minimize the seriousness of Jones' current plight, but when evaluating irreparable harm, the harm must be concrete, tangible, and clear. *Vision-Ease Lens, Inc. v. Essilor Int'l SA*, 322 F. Supp. 2d 991, 998 (D. Minn. 2004). The burden is on Jones to make that case, and she has not fully done so. *Jackson v. Macalester Coll.*, 169 F. Supp. 3d 918, 921 (D. Minn. 2016).

PHA argues that Jones' delay in seeking emergency injunctive relief shows her potential harm is overstated. But the immediacy of Jones' current financial crisis stems from her recent job loss. Pl. Aff. ¶ 3, Docket No. 9. Jones filed this motion two weeks after she lost her job. Motion, Docket No. 8. Thus, the delay in seeking the injunction relief reflects changed circumstances rather than a lack of urgency on Jones' part. Therefore, the delay in seeking this TRO does not, of itself, undermine her claim of irreparable harm.

Finally, there is some question as to whether the potential irreparable harm results from PHA's assistance termination. As Jones has been without Section 8 assistance since September, 2017, the current status quo is that she receives no assistance. Thus, Jones requests the Court not to preserve the status quo but to revert it five months past. The theory underpinning *Dataphase,* however, is that "the court [may] intervene to preserve the status quo until the merits are determined," not intervene to change it. *Dataphase*, 640 F.2d at 113. But *Dataphase* is a flexible

5

standard and this sequence of events does not of itself require the court to deny the injunctive relief.

In sum, this *Dataphase f*actor weighs slightly in favor of injunctive relief. While Jones has not fully borne her burden to establish whether, when and what irreparable harm will befall if the injunction is not granted, the potential harm is significant.

### B.      Balancing This Harm With The Harm To Others

Describing the Government's harm as "de minimis," Jones contends that the only harm the Government faces is the administrative burden of restoring Jones' assistance and the cost of assistance while the case proceeds. *Id.* PHA argues the Section 8 program's efficiency relies on the uniform application of rules and reinstating Jones' benefits would strip another participant's Section 8 assistance. Def. Mem. 14-15, Docket No. 15. PHA is correct that the program's efficiency would be undermined should participants be permitted to flout deadlines and other rules and still receive assistance. The claim that reinstating Jones' benefits would strip another participant of benefits, however, appears doubtful, as PHA already provides assistance to over 100 more families than there are vouchers provided by HUD and the amount of assistance it does provide varies depending on fluctuations in participants' income. *Id.* at 3.

The balance between potential homelessness and the efficient operation of Section 8 assistance has been previously found to "not strongly favor either party" and be "neutral," *Perkins,* 221 F. Supp. at 1012, and weighed together, this Court agrees.

### C.      Probability of Success On The Merits

Jones argues her due process claims and breach of contract claim have high likelihood of success on the merits. Pl. Mem. 7-11, Docket No. 10. Likelihood means

6

the movant "need only show a reasonable probability of success." *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013).

Here, there is not a reasonable probability that Jones' claims will succeed. As required by 24 C.F.R. § 982.555(c)(2), PHA provided Jones written notice of termination that contained a brief statement explaining the reason for the termination and provided an opportunity to, and a deadline for, requesting a hearing to contest the termination. Jones acknowledges receiving the termination letter and failing to timely request a hearing. Thus, Jones' due process claim premised on inadequate notice and/or failure to provide a hearing must fail. Jones acknowledges the termination letter – had it been sent alone – would have afforded her due process, but contends that the inclusion of the balance due letter and the Repayment Agreement with the termination notice undermined that notice and caused her to believe she would not be terminated if she signed the Repayment Agreement. While Jones' confusion may have been sincere, it cannot render the otherwise adequate notice constitutionally deficient.

Nor does Jones' breach of contract claim have merit. Jones argues that the Repayment Agreement was a binding contract with PHA. This is true. But Jones misconstrues the terms of that agreement, which was simply an agreement to repay a debt. Because Jones was not terminated for failure to repay the balance due, PHA's termination of her did not violate the Repayment Agreement. Jones argues that because the balance due letter stated that a failure to repay the obligation *could* result in termination, this letter modified the termination notice such that as long as Jones met her repayment obligation, she would not be terminated. A plain reading of those

7

documents simply does not support this argument; nor has Jones cited any precedent to support it.  Jones' misreading of these documents does not a contract make.

### D.  Public Interest

Jones argues granting the TRO is in the public interest because it would prevent a disabled woman and her family from being homeless, and allows for due process. Pl. Mem. 13-14, Docket No. 10.  PHA contends that interest is outweighed by the efficient operation of the Section 8 program, which provides affordable housing for thousands who might otherwise be unable to pay rent.  Both interests are meritorious. Therefore, public interest does not favor either side.

### E.  Weighing the Four Factors

Because there is little chance that Jones would succeed on the merits, and the balance of the other factors only slightly favor granting the injunctive relief, the Court recommends the motion be denied.

### RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED THAT Plaintiff's Motion for Emergency Injunctive Relief [Docket No. 8] be **DENIED.**

Dated:     February 27, 2018

*s/ David T. Schultz*
DAVID T. SCHULTZ
United States Magistrate Judge

### NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).