UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TASHAWNA JONES,   CIVIL NO. 17-5448 (MJD/DTS)

    Plaintiff,

v.   **ORDER**

PUBLIC HOUSING AGENCY
OF THE CITY OF SAINT PAUL,

    Defendant.

_____

    Heather Meyers, Southern Minnesota Regional Legal Services, Counsel for Plaintiff.

    Sean Dillon Whatley, St. Paul Assistant City Attorney, Counsel for Defendant.

_____

## I.    Introduction

The above matter comes before the Court upon Defendant Public Housing Agency of the City of St. Paul's ("PHA") motion to dismiss or in the alternative for summary judgment.

## II.    Background

In her Amended Complaint, Plaintiff alleged she was notified by letter received on August 21, 2017 that her Section 8 assistance would be terminated

effective September 30, 2017 because she failed to report her receipt of child support income from 2014 through June 2017 ("Termination Letter"). (Am. Comp. ¶ 35, Ex. 1.) The Termination Letter set forth the bases for this decision and provided her until August 31, 2017 - ten working days from August 17 - to request an informal hearing to challenge the termination of her benefits. (Am. Comp. Ex. 1.)

In the envelope with the Termination Letter was a separate letter informing her that she owed the PHA $668 in overpayments ("Balance Owing Letter"), and a third document that was a proposed Section 8 Repayment Agreement (Repayment Agreement"). (Id. Exs. 2 and 3.)

The Balance Owing Letter informed Plaintiff of a balance due because of the child support payments that had not been reported and explained that the balance represented a retroactive adjustment to what her rent portion should have been from June 2014 through June 2017. (Id., Ex. 2.) The letter informed Plaintiff of the options available for repayment and warned that if she did not pay the balance or enter into a Repayment Agreement, her Section 8 assistance could be terminated. (Id.)

After reading the Repayment Agreement and Balance Owing Letter, Plaintiff believed that if she signed the Repayment Agreement and made the first payment, the Termination Letter would be void. (Second Jones Aff. ¶ 18.) That same day, August 21, 2017, Plaintiff signed the Repayment Agreement and went to the PHA offices, where she turned in the signed agreement and the first payment. (Id. ¶ 19.) Because she believed that by accepting the terms of the Repayment Agreement and making the first payment her Section 8 assistance would continue, Plaintiff did not request an informal hearing within the time allowed to challenge the termination. As a result, her Section 8 assistance was terminated on September 30, 2017. (Id. Ex. 1, 5.)

Plaintiff has asserted the following causes of action in her Amended Complaint: Count 1: Due Process violations; Count II: Breach of Contract.

## III. Standard Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true. Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

### IV. Standard Motion for Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." Amini v. City of Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)). The party opposing summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## V. Argument

### A. Due Process Violations

Plaintiff alleges that the PHA violated her due process rights by: 1) issuing notices that were confusing and affirmatively misleading to Plaintiff about how to prevent the PHA from terminating her Section 8 voucher assistance; and 2) issuing notices that were confusing and affirmatively misleading to Plaintiff so that the PHA failed to afford her an opportunity for a hearing before terminating her Section 8 assistance.

The fundamental requisites of due process of law – the opportunity to be heard at a meaningful time and in a meaningful manner – "require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." Goldberg v. Kelly, 397 U.S. 254, 267-68 (1970).

Courts have consistently held that in the context of terminating Section 8 assistance, due process requires that a participant receive notice of the legal basis for termination and an explanation of the facts giving rise to the termination. See Jones v. Lansing Hous. Comm'n, No. 5:03-cv-123, 2003 WL 26118817, at *6 (W.D.

Mich. Sept. 19, 2003) ("A proper notice under Goldberg would state the particular act alleged committed and give a brief factual statement concerning the incident."); see also Green v. Carson, 256 F. Supp.3d 411, 425-26 (S.D.N.Y. 2017) (finding that by sending no notice, plaintiff's due process rights were violated); Brawner v. Pasco Cty. Hous. Auth., No. 8:14-cv-01616-SDM, 2014 WL 5093993, at *3 (M.D. Fla. Oct. 9, 2014) (concluding that the flexible due process standard was satisfied where the plaintiff received a termination notice for violations of the Section 8 program and given sufficient time to respond).

Plaintiff does not dispute that the Termination Letter, the Repayment Agreement and the Balance Owing Letter are constitutionally adequate when read separately. Plaintiff claims, however, that under the totality of the circumstances, sending the notices in the same envelope resulted in confusion as to how Plaintiff could prevent termination of her assistance.

The PHA argues that such an argument has no merit, noting that this Court previously found in its Order denying Plaintiff injunctive relief:

> [T]here is no claim that the language used in the forms is affirmatively misleading or confusing. Further, the overpayment letter does not inform or suggest that by signing the Repayment Agreement, and making monthly payments, such action would nullify the termination notice. In addition, the termination notice clearly states that if Plaintiff disagreed with the decision to terminate benefits she "**must** submit a written request

for an informal hearing within ten (10) workings days of the date of this letter" and provides information as to the contact person and the address to send the request.  (Ex. 1 (emphasis added)).

The PHA further argues that it complied with due process requirements by affording Plaintiff the opportunity for a pre-termination hearing.  Plaintiff was provided prompt written notice of the grounds for termination, instructions for how to request a hearing to dispute the termination, and the deadline by which to request a hearing.  (Whatley Aff. Ex. A.)

In opposition to the PHA's motion to dismiss, Plaintiff has submitted an affidavit to explain her confusion as to the status of her housing voucher following the receipt of the above described documents.  She stated that from 2014 to 2016, she was placed in the Earned Income Disregard (EID) program[1], which meant her earned income was not counted for a twelve-month period in determining the portion of rent she would have to pay.  (Jones Aff. ¶ 4, Ex. 10.)  As a result, she did not think the sporadic child support payments she received during that time would be counted.  (Id. ¶ 5.)  Plaintiff states that she brought up

---

[1] As explained in the March 2014 letter sent to Plaintiff, the EID program is available for disabled persons.  For the first year, the earned income of the beneficiary is not used in determining his/her portion of the rent.  For the next year, earned income is disregarded at 50%.  After that, the PHA will use 100% of the earned income in determining the amount the beneficiary must pay for rent.  (Id. Ex. 10.)

the child support payments in June 2017 because at that time she was no longer in the EID program. (Id. ¶ 7.) Her worker, Joshua, did not mention that she could be terminated for not reporting that income, but told her to get the information to him so he could recalculate her income. (Id. ¶ 8.)

On August 7, 2017, Plaintiff received a "Contract Rent Change" from the PHA informing her of what her new portion of rent would be starting October 1, 2017. (Id. ¶ 10, Ex. 12.) Upon receiving this notice, Plaintiff believed everything was fine because the PHA had her child support information and she knew what her new rent amount would be. (Id. ¶ 11.) Shortly thereafter, she received the Termination Letter, the Balance Owing Letter and the Repayment Agreement in the same envelope. (Id. ¶ 12.) She admits to reading all the documents but believed that by combining the documents in the same envelope, she was given options: either request a hearing or agree to make the repayments. (Id. ¶¶ 13-18.) Based on this understanding, she visited the PHA offices and gave them a signed copy of the Repayment Agreement along with the first payment. (Id. ¶ 19.) She claims to have made several phone calls to her worker Joshua, but that he did not return her calls. (Id. ¶ 21.) She sent him an email on September 14, 2017, and in

his reply, Joshua informed her that her voucher was going to be terminated on September 30, 2017 because she had not requested a hearing. (Id. ¶ 23.)

Plaintiff argues that by including the Termination Letter, the Balance Owing Letter and the Repayment Agreement in the same envelope, Plaintiff was lulled into believing that if she signed the Repayment Agreement and made the required payments, her Section 8 housing assistance would not be terminated. The PHA's failure to explain to Plaintiff that it was terminating her Section 8 assistance even if she signed the Repayment Agreement exacerbated Plaintiff's confusion. She further argues the PHA's failure to respond to her after she provided it with the Repayment Agreement and the first payment further lulled Plaintiff into believing that the termination was resolved. Accordingly, Plaintiff argues that the PHA terminated her assistance under circumstances that were not reasonably calculated to inform her that it was offering a Repayment Agreement and that it was separately terminating her assistance.

Based on the current record, which now includes Plaintiff's affidavit and attached exhibits, the Court finds that there are questions of fact as to whether sending Plaintiff the Termination Letter, the Balance Owing Letter and the Repayment Agreement in one envelope was confusing and affirmatively

misleading. As set forth in her affidavit, Plaintiff claims she mistakenly did not include the sporadic child support payments because she believed the PHA would be given that information when she signed releases. (Second Jones Aff. ¶ 6.) When she voluntarily brought up the child support issue with her case worker Joshua in June 2017, he did not inform her of a possible termination; instead he told her to report the payments so the PHA could recalculate her income. (Id. ¶ 8.) When she did report the child support payments to the PHA, Plaintiff received a Contract Rent Change notice on August 7, 2017, which informed her of her new rent contribution as of October 1, 2017. (Id. ¶ 10, Ex. 12.) Plaintiff's confusion is thus understandable when two weeks later, she received another envelope from the PHA containing the Termination Letter, Balance Owing Letter and the Repayment Agreement.

Accordingly, the Court finds the PHA is not entitled to summary judgment as to Count I.

### B. Breach of Contract

In her Amended Complaint, Plaintiff alleges that the PHA presented her with three offers: 1) pay $668 in full; 2) sign a repayment agreement to pay $56 per month; or 3) dispute the amount or calculation of the overpayment. (Am.

Comp. ¶ 66.) She further alleges that she accepted the offer to make monthly payments and that on August 21, 2017, she tendered to the PHA $56 and a signed copy of the Repayment Agreement. (Id. ¶ 67.) Plaintiff alleges that the PHA breached this agreement when it terminated her Section 8 assistance. (Id. ¶ 70.)

Under Minnesota law, contract interpretation is a question of law, unless the court finds the language ambiguous. Swift & Co. v. Elias Farms, Inc., 539 F.3d 849, 851 (8th Cir. 2008). "When the language of a contract is clear and unambiguous, we enforce the agreement of the parties as expressed in the contract." Caldas v. Affordable Granite & Stone, Inc., 820 N.W.2d 826, 832 (Minn. 2012). The Court has already concluded the terms of the Repayment Agreement are not ambiguous. (See R&R at 7-8.) Because there is no language in the Repayment Agreement which references, or incorporates, the Termination Letter or the Balance Owing Letter, the Court looks solely to the language of the Repayment Agreement. Based on the terms of the Repayment Agreement, the Court finds the termination of Plaintiff's assistance for failure to provide true and complete information did not violate any terms of the Repayment Agreement. As to a claim for breach of contract under Minnesota law, there is no authority

11

for the argument that the terms of the Repayment Agreement were amended simply because such agreement was mailed in the same envelope with the Termination Letter and the Balance Owing Letter.

Accordingly, the Court will grant summary judgment as to Count II.

**IT IS HEREBY ORDERED** that Defendant Public Housing Agency of the City of St. Paul's ("PHA") motion to dismiss or in the alternative for summary judgment [Doc. No. 38] is GRANTED in part and DENIED in part as follows: the motion is denied as to Count I; and granted as to Count II.

The parties are ordered to appear for a settlement conference before this Court on November 8, 2018 at 11:00 a.m. in Courtroom 13E, United States Courthouse, Minneapolis, Minnesota. At the settlement conference, the PHA shall provide the Court a detailed accounting of the costs expended by the PHA in the defense of this case. The settlement conference will be cancelled if, prior to November 8, 2018, the PHA provides Plaintiff a termination hearing.

Date: October 18, 2018

s/ Michael J. Davis
Michael J. Davis
United States District Court